[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on August 3, 1983 at Annapolis, Maryland. They have resided in this state continuously since 1988. There are two minor children issue of the marriage: Ashley Danielle Mendelsohn, born August 5, 1987; and Taylor Davis Mendelsohn, born September 9, 1991.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the statutory criteria as set forth in §§ 46b-56, 46b-81, 46b-82 and 46b-84 Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The plaintiff is 37 years of age and in good health. Both she and her husband, who is 34 years of age, graduated from Carnegie Mellon Institute. The defendant husband has a master's degree in operation research from George Washington University. Neither CT Page 549 party had any assets at the time of their marriage.
The parties lived in Maryland and then moved to Virginia. The plaintiff started a graphic design business out of her home and was doing some freelancing with some modest success. In 1988, the defendant obtained new employment in New York City and the parties moved to Milford, Connecticut to accommodate the defendant's career move.
The plaintiff started over again as a graphic designer and her business reached such success that she incorporated in 1993. The company's growth peaked at $2.8 million in 1994. The 1995 gross sales have been approximately $1.3 million.
The defendant was unemployed from February to September 1993. During this period of time, the plaintiff and her company supported the family. The defendant obtained employment in September 1993 and worked until February 1994. The defendant was earning over $120,000 per year at his employment. The defendant took a leave of absence from his employment at A.T. Kearney in February 1994 and at the present time is working as a management consultant out of his home and a New York office. He has billed and collected approximately $70,000 in his consulting business from January to July 1996.
The plaintiff's company has paid the defendant's health insurance, joint credit cards, insurance on jointly owned properties, defendant's car phone and lease. The plaintiff took a salary from her company and, in addition, the company paid personal expenses for the parties. The plaintiff was able to draw a salary in excess of $200,000 for the years 1993, 1994 and 1995. In addition, many of the parties' personal expenses such as car leases, credit cards, lawn care, nannies, housekeeper, and beach house were run through the business, all of which benefitted [benefited] the defendant.
The defendant did not deal well with the plaintiff's personal and financial success, although he was a beneficiary of her financial success. In 1992 when the defendant found out the plaintiff had gross sales of one million dollars, he requested a 49% share of this business, which the defendant refused. Although the plaintiff consulted with an attorney concerning the marital problems in 1992, the parties continued to live together. When the defendant took a leave of absence from his employment at A.T. Kearney in February of 1994, he took charge of the family CT Page 550 expenses and payroll. Unknown to the plaintiff, the defendant took out excessive sums from the company and deposited them into the parties' joint account which he used to take care of their financials. As a result of this, the plaintiff had excess earnings on her 1994 tax return which has created a tax liability for her in the amount of approximately $46,000.
In addition to the IRS lien, in 1996 the plaintiff lost a major client which will cause a decrease in her revenue income. The Chase Bank with which she has a line of credit has placed a salary cap of $112,000 per year on the plaintiff's salary draw and, in addition, the bank checks her balance sheet on a monthly basis.
The defendant performed minimal work for the company. The rise of this marketing communications firm is attributed solely to the expertise of the plaintiff. During the defendant's unemployment, it was the company that allowed both parties to continue in their lifestyle. There was only minimal evidence as to the non-economic contributions of the defendant to this asset. Any success or failure of this business will be as a direct result of the plaintiff's work, artistry and creativity.
Both parties engaged experts who testified at length as to the value of the plaintiff's business, call "Metropolis Corporation". This company is a going concern under the aegis of the plaintiff, generating a stream of income from clients who are tied to the creative genius of the plaintiff. It is a Subchapter S corporation and the plaintiff is the sole shareholder.
The plaintiff's expert gave a negative value to the business. The defendant's expert gave the business a fair market value of $1,074,000; however, that figure would require that the plaintiff remain in the business for a transitional period anywhere from three months to three years in the event of a sale. The defendant's expert indicated that if the plaintiff did not participate in the business after a sale, the value of the business would be fair less than this fair market value.
This business would have a negligible value in the event of a sale, if the plaintiff were not at the helm. The business follows the service given, in this case, the plaintiff. The goodwill of this company cannot be detached from the personal reputation and ability of the plaintiff. The plaintiff's own earning power is enhanced by such goodwill and is a component of her earning CT Page 551 capacity. Any earnings that the plaintiff may generate in the future for the company create value for the plaintiff, not the marital estate, and create a stream of income with which the plaintiff could pay alimony and/or a property settlement.
Both parties can adequately support themselves. Both parties are young and in good health. The defendant has an ability and capacity to earn at least $125,000 per year in his chosen field. He is earning approximately that amount and more now as a management consultant working out of his home and a New York office. The defendant did not give up any career opportunities to enable the plaintiff to become an exceptional wage earner nor did the defendant sacrifice his career in an effort to increase the plaintiff's earning capacity.
The plaintiff has a salary cap of $112,000 per year, plus perks through her company. Both parties lived well through the company and both parties have substantial liabilities as indicated in their financial affidavits.
The plaintiff generates all the revenues and the plaintiff generates the goodwill. Both experts indicated if the plaintiff did not participate in the business after a sale, the value of this business would be substantially less than the fair market value attributed to it by the defendant's expert.
The defendant has worked since the parties married in 1983 (except as previously indicated). In the early years of the marriage he earned more than the plaintiff. However, in 1992 the balance tipped when the plaintiff had gross sales of one million dollars. The plaintiff felt the marriage started to go downhill in 1993.
Certainly, in the early years of the marriage and when the plaintiff was starting out in her career as a graphic artist, the defendant provided financial and moral support to the plaintiff. The defendant was upset over the plaintiff's refusal to give him any shares of the company as he felt he had introduced perspective clients to the plaintiff and both had contributed to the business. The defendant felt that in 1992 the plaintiff became engrossed in her business which became Number 1 to the plaintiff.
In 1994, A.T. Kearney asked the defendant to return to work on a full time basis. The defendant had been earning $800 per day CT Page 552 as a consultant. The defendant chose not to return to full time employment at A.T. Kearney. In April through July of 1996, the defendant, working out of his home and his New York office, billed $1000 per day plus expenses for his consulting services and worked approximately 76 days.
The defendant worked at "Metropolis Corporation" when he was unemployed, from March 1994 to August 1994. The company's revenues would have peaked at that time with or without the defendant's assistance. The plaintiff claims the defendant's management of the finances at this time created her tax problem which led to the IRS lien of approximately $46,918. The dissolution was initiated in November 1994.
The parties bought the marital home at 68 Hillside Avenue, Milford in 1988 when the parties moved to Milford. The defendant continues to reside in this home.
In 1993, the parties purchased #6 Villa Rosa Terrace, Milford, using substantial funds from the plaintiff's company. The plaintiff thought this would help the marriage and the parties needed more space for their domestic help and themselves.
In 1994, the parties purchased #18 Villa Rosa Terrace, Milford, using substantial funds from the plaintiff's company. The defendant created a home office in #18 and, in addition to the children's nanny and housekeeper, had rooms there. The parties lived in both #6 and #18 Villa Rosa Terrace along with domestic help and rented out #68 Hillside Avenue, Milford.
The parties separated in the Fall of 1994. The defendant continued to reside in #18 Villa Rosa Terrace. The plaintiff continued to reside in #6 Villa Rosa Terrace until March 1995 when she moved out. Both properties went into foreclosure.
Six Villa Rosa Terrace was subsequently sold and the parties have equally divided the proceeds.
Eighteen Villa Rosa Terrace is still under foreclosure. The defendant made some mortgage payments on each of these properties but the deposits and bulk of the payments came from the plaintiff's business, "Metropolis Corporation".
In the Fall of 1996, "Metropolis Corporation" purchased real estate at 606 Gulf Street, Milford, Connecticut. The plaintiff CT Page 553 and her two children have resided there since March 1995.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to either party for the breakdown of the marital relationship.
The court has carefully considered the appropriate statutory criteria in reaching the decisions reflected in the orders that follow.
CUSTODY AND VISITATION
There shall be joint custody of the minor children with primary physical residence to the plaintiff. The defendant shall have reasonable rights of visitation as the parties have agreed and as more specifically set forth in a stipulation entered into between the parties dated June 24, 1996 which this court approves and enters as an order.
CHILD SUPPORT
The defendant shall pay to the plaintiff as child support for the two minor children the sum of $200 per week.
REAL ESTATE
1. The defendant shall be the sole owner of the real estate located at 68 Hillside Avenue, Milford and he shall hold the plaintiff harmless from any and all liability with respect to the mortgage and taxes. The plaintiff shall forthwith quitclaim all her right, title and interest in and to this property to the defendant.
2. The parties shall share equally any shortfall (or profit) arising out of the sale or foreclosure of the mortgage on their jointly owned premises located at #18 Villa Rosa Terrace, Milford, Connecticut.
ALIMONY
Neither party is awarded periodic alimony.
PERSONAL PROPERTY
The parties shall divide their personal property as they CT Page 554 shall agree. If the parties are unable to agree, they are referred to Family Relations for mediation. If mediation is unsuccessful, the parties shall return to court for a hearing and orders thereon.
COUNSEL FEES
Each party shall be responsible for their respective attorneys' fees and expert witnesses' fees.
MEDICAL INSURANCE AND COBRA
1. The defendant shall be entitled to COBRA benefits for health coverage as are available through the plaintiff's company at his expense.
2. The plaintiff shall maintain the existing medical coverage as is available through "Metropolis Corporation" for the benefit of the minor children.
Any unreimbursed medical, dental, hospital expenses shall be equally divided between the parties.
MISCELLANEOUS
1. The parties shall indemnify and save each other harmless in connection with any jointly filed state or federal income tax return to the extent that the party who has understated income or overstated deductions shall be responsible for any interest, penalty or additional taxes imposed as a result of such understatement or overstatement.
2. The defendant shall be entitled to claim one minor child as a dependent for income tax purposes provided he is current on the child support payments as of December 31. This provision shall be modifiable.
3. Each party shall be declared the owner of the assets in his or her name unless otherwise disposed of in this decision.
RETIREMENT FUNDS
The plaintiff shall transfer to the defendant from her retirement account in the sum of twenty-five thousand dollars by way of a Qualified Domestic Relations Order (QDRO). The court CT Page 555 shall retain jurisdiction for the entry of said order.
DEBTS
The defendant shall contribute the sum of five thousand dollars toward the joint credit card debts. Said sum shall be paid by the defendant within 30 days of date. The plaintiff shall be responsible for the remainder of said joint debts and shall hold the defendant harmless.
PROPERTY SETTLEMENT
The court recognizes that the defendant has made contributions to the marriage.
The plaintiff shall pay to the defendant as a lump sum property settlement the sum of seventy-five thousand dollars ($75,000). Said lump sum property settlement shall be paid within 18 months of date or sooner as the parties shall agree. In the event payment is not made when due, the defendant shall be entitled to interest of eight percent on the unpaid amount.
INSURANCE
Each party shall name the minor children as irrevocable beneficiaries on their respective life insurance policies. This provision shall be modifiable.
ARREARS
The defendant has paid any arrears on child support as of the date of the trial. The pendente lite orders shall remain in effect and shall be current as of the date of this decision.
Coppeto, J.